IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LYNN STOUT, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:05-CV-1202-JOF |
| YEHUDA SMOLAR, et al., : | |
| : | |
| Defendants. : | |

## OPINION AND ORDER

This matter is before the court on Plaintiff's motion for summary judgment [42-1].

### I.   Background

#### A.   Procedural History

On May 5, 2005, Plaintiff, Lynn Stout, filed suit against Defendants, Yehuda Smolar and Smolar, Sakas & Goodhart, for various violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and state law breach of contract. In an order dated May 31, 2006, the court reviewed the procedural history of the case which included a motion for default judgment filed by Plaintiff. The court lifted the default, reinstated Defendants' defenses, and directed Plaintiff to file an amended complaint naming the proper employer as Defendant. On June 9, 2006, Plaintiff filed an amended complaint against Yehuda Smolar and Yehuda Smolar, P.C., again raising claims under the Fair Labor Standards Act and for

breach of contract. Plaintiff seeks unpaid wages, overtime compensation, liquidated damages, and attorney's fees. After a period of discovery, Plaintiff filed the instant motion for summary judgment on November 30, 2006.

**B.     Facts**

Plaintiff is a professional private investigator with a background in law enforcement. He worked for Defendants for 18 years until a time when Defendant Smolar's law firm experienced some financial difficulties. Defendant Smolar testified that at the time he began experiencing financial difficulties, he entered into an agreement with financing companies such that "in return for assigning the office revenue and pledging all of my personal assets and office assets they provided a line of credit." Smolar Depo., at 17. The financing companies also had the power to refuse to fund certain expenses, including Plaintiff's salary. *Id.* at 46. At some periods during late 2003 and early 2004, Plaintiff was not paid at all. On January 14, 2005, Defendant Smolar terminated Plaintiff.

In 2002, Defendants grossed over $1,403,000. In 2003, Defendants grossed $493,229. In 2004, Defendants grossed over $1,060,000. Defendants produced numerous telephone records of interstate calls. Both Plaintiff and Defendant Smolar testified that Plaintiff had been sent outside the state of Georgia on at least one occasion for work-related purposes.

2

Plaintiff was employed by Defendants as Director of Investigations. Plaintiff investigated accident scenes for Defendant Smolar. Plaintiff determined the investigative view of the case and supervised outside contractors and witnesses. Plaintiff would take photographic and other evidence, including testimony from witnesses. Plaintiff gathered evidence to be preserved and stored it at a warehouse for which he had the only key and access code. He also negotiated the purchase of defective products and vehicles for preservation. Plaintiff would also determine whether expert witnesses were necessary. Defendant Smolar used Plaintiff's work in the litigation of or settlement of disputes. Prior to his employment with Defendants, Plaintiff worked as an investigator with his own private security company where he directed the activities of other employees. Plaintiff had also worked for the police department of Albany County, Georgia, from 1962 until 1985 and worked as the chief investigator for the county sheriff.

As will be discussed further below, there is a dispute of fact as to the amount of hours Plaintiff was required to work on the job. Plaintiff contends that he had to travel and work long hours investigating accident scenes. Several individuals who worked for or with Defendant Smolar provided affidavits indicating that Plaintiff arrived late to the office, took two-hour lunches, read novels in the office, and left work early. *See* Affs., Lori Rusinski, Jeffrey Sakas, James Seifter. Plaintiff was unable to drive for part of 2004 because his driver's license was suspended due to a DUI arrest.

Plaintiff was paid on a salary basis of $80,000 for the years 2002, 2003, and 2004. Defendants never required Plaintiff to report the number of hours he worked each week, nor did Defendants maintain any records of Plaintiff's hours. At the time his law firm was incorporated, approximately 1990, Defendant Smolar inquired as to whether his employees would be covered by the FLSA. At that time, it was determined that Plaintiff was an exempt employee under the FLSA, and therefore, he did not need to keep hourly records. Defendant Smolar testified that he periodically had conversations about his obligations under the FLSA with comptrollers, financial managers, and certified public accountants. *See* Smolar Depo., at 69-72. Defendant Smolar testified:

> [M]y best understanding from the inquiries I made was that some of the employees, such as the secretaries or legal assistants, that hours had to be kept for them. And they were. But because Lynn was a highly-compensated salaried employee who was self-directed and supervised others outside of the office, no hours needed to be kept for him. And during the relevant period of time, there was never a week where he worked more than 40 hours.

*Id.* at 69.

On January 25, 2005, after Plaintiff's termination, Defendant Smolar gave Plaintiff a letter which stated "[i]t is acknowledged that you are owed $31,401.96 in compensation and $8,219.40 for expenses." *Id.* Defendant Smolar has paid $6,500 toward expenses.

### C. Contentions

Plaintiff contends that during his employment with Defendants, he was covered by the Fair Labor Standards Act. Plaintiff asserts that he worked substantial overtime and was

4

not paid for it. Plaintiff argues that Defendants' failure to comply with the requirements of the Fair Labor Standards Act was willful, and therefore he is entitled to damages for three years. Plaintiff also avers that Defendants breached their January 25, 2005 contract with him by not paying the full amount of salary agreed to in the letter. Plaintiff recognizes that any money he would receive on the breach of contract claim would offset damages he believes he is entitled to under the Fair Labor Standards Act. It appears that Plaintiff seeks summary judgment as to liability only and does not yet assert an amount of damages.

Defendants respond that Plaintiff's work as a private investigator is exempt from the Fair Labor Standards Act because Plaintiff had discretion in the manner in which he conducted his work. Defendants also assert that for a portion of the time Plaintiff claims damages, Defendants' business was not covered by the Fair Labor Standards Act because Defendants did not generate more the $500,000 in gross dollar income. Defendants contend that even if their business was covered by the Act, they did not violate it willfully because they had inquired at the formation of the corporation whether employees would be covered by the Act. Defendants do not dispute that the January 25, 2005 letter constitutes a contract between Defendants and Plaintiff.

AO 72A
(Rev.8/82)

**II.     Discussion**

    **A.     Breach of Contract Claim**

There is no dispute that the parties formed a contract with the January 25, 2005 letter. In the letter, Defendant Smolar stated that he owed Plaintiff $31,401.96 in unpaid salary and $8,219.40 in unreimbursed expenses. Defendant Smolar has paid only $6,500 toward expenses. Plaintiff, therefore, is entitled to the remaining amount as damages to his breach of contract action. As such, the court GRANTS Plaintiff's motion for summary judgment as to his breach of contract claim.

Defendants contend that this agreement constitutes an accord and satisfaction as to Plaintiff's salary claim. *See* O.C.G.A. § 13-4-101. However, Plaintiff correctly notes that the Eleventh Circuit held in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), that there cannot be private settlement of claims under the FLSA. Rather, settlements must either be approved by the Department of Labor or the district court through stipulation. *See also Lee v. Flightsafety Services Corp.*, 20 F.3d 428 (11th Cir. 1994).

Nonetheless, although Plaintiff's motion for summary judgment is not clear on this point, his motion focuses substantially on the overtime aspect of his FLSA claim. Obviously, Plaintiff's agreed-upon salary of $80,000 exceeds minimum wage for a 40-hour week. There appears to be a period of time for which Plaintiff did not receive wages. Plaintiff, however, has proffered no evidence to show that the amount of wages he should

6

have received at that time was more or less than the $31,401.96 in unpaid salary agreed upon in the parties' January 25, 2005 letter agreement. Unless informed otherwise by Plaintiff, the court assumes that Plaintiff pursues his salary claim via the breach of contract theory and will consider Plaintiff's overtime claims below under the auspices of the Fair Labor Standards Act.

### B.     Fair Labor Standards Act

The court must first determine whether Defendants are "employers" under the FLSA. If so, the court must consider whether Plaintiff's employment comes within any exemptions under the FLSA. Defendants claim that Plaintiff's job is exempt under both the "administrative" and "professional" exemptions.

####     1.     Employer

Under the FLSA, an "employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage." *See*, *e.g.*, *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). Plaintiff contends that his employment is covered under the enterprise theory. Under the FLSA, the phrase "enterprise engaged in commerce or in the production of goods for commerce" mean an enterprise that

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any

7

> person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii). The phrase "engaged in commerce" within the FLSA is given broad construction. *See*, *e.g.*, *Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090, 1093 (5th Cir. 1973).

> For an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication by industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne*, 448 F.3d at 1266 (citing 29 C.F.R. §§ 776.23(d)(2) and 776.24). Further, under the FLSA, commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Plaintiff testified that a large part of his work was conducted on the phone. The phone bills submitted by Plaintiff show that he made numerous phone calls outside the state of Georgia. The parties also agreed that at least on one occasion, Plaintiff was sent out of state as part of his work for Defendants. For these reasons, the court finds that Plaintiff has satisfied the "engaged in commerce" prong. *See*, *e.g.*, 29 C.F.R. § 776.10(b) ("employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the Act.").

Turning to the gross volume of sales, as discussed above, in 2002, Defendants grossed more than $1,403,000. In 2003, Defendants grossed $493,229. In 2004, Defendants grossed more than $1,060,000. Clearly, Defendants meet the threshold in 2002 and 2004. In 2003, the gross is just under the $500,000 threshold. Under an interpretative bulletin of the Secretary of Labor, "if an employer's business exceeds the dollar volume requirement in any calendar year, the business will be presumed to be covered in the next year unless the employer establishes through use of the rolling quarter method that its dollar volume for this previous twelve months has fallen below the [$500,000] mark." *See Donovan v. I-20 Motels, Inc.*, 664 F.2d 957, 958 (5th Cir. 1981) (per curiam) (citing 29 C.F.R. § 779.266). "Thus, the rolling quarter method is a way of determining currently whether a business once covered by the Act continues to be subject to it." *Id.* The *I-20 Motels* court recognized that the rolling quarter method might not be appropriate in circumstances where it would cause the employer to shift in and out of coverage under the FLSA. *Id.* at 958-59. Ultimately, however, the court held that the "rolling quarter method is not to be set aside unless its application would make FLSA coverage more speculative, constantly fluctuating or predictably unfair." *Id.* at 959.

AO 72A
(Rev.8/82)

Here, under the rolling quarter method, the following figures apply:

| Year by Rolling Quarters | Defendants' Revenue |
|---|---|
| 2d Q 2002 - 1st Q 2003 | $1,110,876.57 |
| 3d Q 2002 - 2d Q 2003 | $876,515.67 |
| 4th Q 2002 - 3d Q 2003 | $666,982.66 |
| 1st Q 2003 - 4th Q 2003 | $493,229.16 |
| 2d Q 2003 - 1st Q 2004 | $604,316.65 |
| 3d Q 2003 - 2d Q 2004 | $1,159,475.98 |
| 4th Q 2003 - 3d Q 2004 | $1,212,647.51 |

Under the rolling quarter analysis, Defendants should have been applying the FLSA to Plaintiff's employment until the 4th quarter of 2003. By the 1st quarter of 2004, Defendants' revenues again exceeded the $500,000 threshold on the rolling quarter basis. Therefore, the court finds that the only time period Plaintiff would not be covered by the FLSA would be the last quarter of 2003.

Having determined that Yehuda Smolar, PC, is an employer, the court must next consider whether Defendant Smolar is also an employer. An employer under the FLSA is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Further, if an individual with managerial responsibilities is found to be an employer under the FLSA, that individual can be found joint and severally liable for violations of that Act. *See Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994); *Aimable v. Long & Scott Farms*, 20 F.3d 434 (11th Cir. 1994) (stating that if

10

appellant was a joint employer, it would be responsible for fulfilling the requirements of the FLSA and the Migrant and Seasonal Agricultural Worker Protection Act); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (if individuals are joint employers, they can be enjoined along with the corporate employer).

The Eleventh Circuit has explained that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Therefore, the court holds that Yehuda Smolar is personally liable to Plaintiff, as well as Yehuda Smolar, P.C.

    2.   Exemptions

The FLSA exempts from its coverage certain classes of employees, including those "employed in a bona fide executive, administrative, or professional capacity." *Id.*, § 213(a)(1). An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies, and exemptions are narrowly construed against the employer. *See Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (per curiam).

The FLSA itself does not define "bona fide professional," and other terms but grants the Secretary of Labor the authority to define such terms. *See id.*, § 213(a)(1); *Auer v. Robbins*, 519 U.S. 452, 456 (1997). Thus, the court must look to the definitions provided

11

by the Department of Labor to determine whether an employee qualifies for an exemption under this category.

The current regulatory definition of "employed in a bona fide . . . administrative . . . capacity" includes (1) whether the employee is paid on a salary basis of at least $ 455 per week, (2) with a primary duty that consists of the "performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers"; and (3) whose duties include work requiring "the exercise of discretion and independent judgment." *See* 29 C.F.R. § 541.200; *see also Hogan*, 361 F.3d at 626.[1] In determining whether work relates to management or general business operations, courts have applied the "administration/production dichotomy" described in the Secretary of Labor's regulations which state:

> The phrase "directly related to management policies or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

---

[1] The Fair Labor Standards Act regulations relating to the administrative exemption were revised effective August 23, 2004. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004) (indicating that the amended regulations are effective on August 23, 2004). Plaintiff's employment was terminated on January 14, 2005, so he worked under both sets of regulations. Neither party contends, however, that the revisions alter the meaning or scope of the exemption and for the sake of clarity, the court will refer to the new regulations.

29 C.F.R. § 541.201(a); *Hogan*, 361 F.3d at 626-27.

> As an example of an administrative exempt position, the regulations discuss:
>
> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damages estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

*See* 29 C.F.R. 541.203(a).

In *Hogan*, the court held that employees whose duties included "promoting sales, advising customers, adapting policies to customer's needs, deciding on advertising budget and techniques, hiring and training staff, determining staff's pay, and delegating routine matters and sales to said staff," engage in administrative – and not production – tasks. *Id.* at 627. The court also held that such tasks would require the employees to exercise discretion and independent judgment. *Id.*

Here, there is no real dispute that Plaintiff exercised discretion and independent judgment in carrying out his investigative duties for Defendants. Furthermore, Plaintiff's duties went to the general business operations of the employer. Much like the example in the Department of Labor regulations, Plaintiff interviewed witnesses, inspected automobile accident sites, and reviewed information from those accidents to determine what evidence would need to be preserved and whether expert witnesses would be necessary. Defendants

used Plaintiff's work in the litigation or settlement of disputes. Under both the regulations and *Hogan*, therefore, the court finds that Plaintiff is an exempt administrative employee.[2] Because the court finds that Plaintiff's employment comes within the administrative exemption and, therefore, Plaintiff's FLSA claim fails, the court need not consider whether it would also be covered by the professional exemption. The court DENIES Plaintiff's motion for summary judgment on his FLSA claims.

### III. Conclusion

The court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment [42-1].

Defendants are DIRECTED to pay Plaintiff $33,121.36, plus any applicable interest. The Clerk of the Court is DIRECTED to close this case.

**IT IS SO ORDERED** this 18th day of September 2007.

---

[2]The court finds the facts in *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262 (W.D. Pa. 1985), to be distinguishable. There, the plaintiff's primary duty was the investigation of insurance claims. He would search public records, serve subpoenas and orders, conduct surveillance, and interrogate witnesses. There was no evidence in the record as to the degree of discretion afforded to the plaintiff in executing his job. Here, to the contrary, there is ample evidence that Plaintiff had full discretion to investigate the scene of an accident, including determining what materials needed to be preserved and whether expert witnesses would be required. Furthermore, *Gusdonovich*'s holding would appear to be contrary to the insurance claims adjuster example of administrative exemption cited by the Department of Labor.

AO 72A
(Rev.8/82)

              s/ J. Owen Forrester
              J. OWEN FORRESTER
      SENIOR UNITED STATES DISTRICT JUDGE